UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EUGENE STARSKI,                          )
                                         )
        Plaintiff,                       )
                                         )     CIVIL ACTION NO.
v.                                       )     06-10157-DPW
                                         )
ALEXANDER KIRZHNEV and                   )
DAI SYNDITRADE LIMITED,                  )
                                         )
        Defendants.                      )

MEMORANDUM AND ORDER
March 15, 2011

This matter arose from an alleged joint venture involving a
debt-swap agreement between the Socialist Republic of Vietnam and
the Russian Federation.  On May 27, 2010, a jury determined that
there had been no enforceable facilitation arrangement with
respect to the debt-swap agreement between plaintiff Eugene
Starski and defendants Alexander Kirzhnev and his company, DAI
Synditrade Limited.  Judgment was accordingly entered in favor of
the defendants.

Starski now moves for a new trial on the grounds that
certain evidence was improperly excluded at trial.  I will deny
that motion because I find the evidence was not improperly
excluded.  Starski also seeks the sanction of entry of judgment
against Kirzhnev for various alleged fraudulent conduct.  I will
deny that motion because I decline to disturb a jury's verdict on

the merits of the dispute by recourse to a sanctions motion practice focused upon shortcomings collateral to the merits.

## I. BACKGROUND

The transaction at issue between the parties in this matter is the facilitation of an agreement between the governments of the Socialist Republic of Vietnam and the Russian Federation to accelerate the payment of a certain debt owed by Vietnam to Russia. Starski alleged that he entered into an agreement with Kirzhnev — and, through him, with his company DAI Synditrade — to introduce Kirzhnev to a Vietnamese business contact, Sovico Corporation ("Sovico"), in order to negotiate the debt-swap. According to the alleged agreement, Kirzhnev was to use his own contacts in the Russian Finance Ministry and Starski's Vietnamese contacts to facilitate the transaction. In return for making the introductions, and provided the debt-swap actually occurred, Kirzhnev was to pay Starski the larger of 2.5% of the total amount repaid to Russia or half of Kirzhnev's commission. As evidence of this agreement, Starski presented a document purporting to be a photocopy of a signed contract between Starski and Kirzhnev memorializing those terms.

According to Starski, Kirzhnev successfully negotiated a deal between Russia and Vietnam that led to the repayment of at least $1 billion to Russia and a $75 million commission to Kirzhnev. Although Sovico received a small portion of the

commission, Starski never received any of the $25 million that he alleges is owed him under the agreement. Consequently, on January 25, 2006, Starski filed suit against Kirzhnev and DAI Synditrade alleging conversion, breach of contract, unjust enrichment, and a violation of state consumer protection laws. He also alleged fraud by Kirzhnev.

Discovery, like much of this litigation, was dogged by Kirzhnev's absences from the country, failure to communicate with his local counsel, and lack of diligence and responsiveness. Kirzhnev failed to appear at two scheduled depositions and was eventually deposed only after Starski moved for default judgment following the second failed deposition, which had been ordered by this court. During the deposition, Kirzhnev claimed that he had not known about the prior scheduled depositions. The defendants also sought a number of emergency continuances shortly before hearings, briefing deadlines, and, most notably, four days before trial was to begin.[1] *See, e.g.*, Mot. for Cont., Feb. 17, 2010 (Doc. No. 96); Mot. for Extension, Dec. 22, 2008 (Doc. No. 50); Mot. to Cont., June 12, 2008 (Doc. No. 38); Mot. to Cont., Apr. 2, 2008 (Doc. No. 33); Mot. to Cont., Sept. 19, 2006

---

[1]It should be noted that for his part Starski also sought continuances and extensions, although several were at least in part due to Kirzhnev's tactics. *See, e.g.*, Mot. to Cont., Aug. 24, 2009 (Doc. No. 75); Mot. for Extension, Mar. 23, 2009 (Doc. No. 54); Mot. to Cont., June 12, 2008 (Doc. No. 38); Mot. to Cont., Apr. 16, 2008 (Doc. No. 36); Mot. for Extension, Jan. 7, 2008 (Doc. No. 30).

(Doc. No. 17).  At one point in early 2008, evidently frustrated
by the lack of communication with — and compensation by — his
clients, the defendants' local counsel, Peter Horstmann, moved to
withdraw from the case.  *See* Mot. to Withdraw (Doc. No. 39).
That motion was later itself withdrawn two months after I granted
it, and Horstmann continued to assist in the representation of
the defendants throughout the litigation of this case.  *See* Mot.
to Withdraw Mot. to Withdraw (Doc. No. 39).

The defendants' emergency motion to continue the trial, set
to commence on Monday, February 22, 2010, is the subject of
Starski's motion for sanctions.  On Wednesday, February 17, 2010,
Horstmann alerted the court by email that Kirzhnev was
"anesthetized and unconscious" due to "emergency surgery" that
took place in Moscow earlier that day.  On the same day,
Horstmann filed an "Emergency Motion to Continue Trial" based on
Kirzhnev's medical situation.  Mot. to Cont., Feb. 17. 2010 (Doc.
No. 96).  In the motion, Horstmann made the following
representations: (1) Kirzhnev's wife informed counsel that
Kirzhnev had gone to the hospital to address pain in his back and
shoulder following a fall and underwent surgery; (2) medical
staff told Mrs. Kirzhnev that the surgery was the first of three
surgeries that Kirzhnev would need; (3) the details of the injury
and treatment were unknown at that time; and (4) Kirzhnev would
be unavailable for trial for at least forty days due to

4

rehabilitation. *Id*. ¶¶ 3-5. According to the motion, Starski's counsel indicated that there would be no objection to the continuance, and indeed none was forthcoming. *Id*. ¶ 9.

At a hearing on February 18, 2010, despite my skepticism and although no medical records were immediately available from Russia, I granted a continuance and set a new trial date of May 24, 2010. Nearly one month following the alleged surgery, Kirzhnev submitted, through counsel, medical documentation of his condition and treatment. Counsel filed two unsworn and unauthenticated letters from a Dr. A.V. Sokolov, Trauma Center Chief of the Municipal Clinical Hospital No. 67 ("Hospital No. 67") in Moscow. The first, dated February 17, 2010, maintained that Kirzhnev had undergone "osteosynthesis surgery" under general anesthesia to "fix[] the bone fragments in the correct position by metal pins" and that Kirzhnev would require in-patient treatment at Hospital No. 67 until March 25, 2010. *See* Status Update, Mar. 12, 2010, Ex. 1 (Doc. No. 97). A second purported letter from Dr. Sokolov, dated March 2, 2010,[2] confirmed that Kirzhnev remained in in-patient care at Hospital No. 67 for rehabilitation and treatment following his surgery. Status Update, Mar. 12, 2010, Ex. 2 (Doc. No. 97).

---

[2] I must note that, even to a non-expert regarding handwriting analysis, the signature of A.V. Sokolov on the March 2, 2010 letter appears strikingly dissimilar from that on the February 17, 2010 letter.

Following his own inquiry into Kirzhnev's unauthenticated medical disclosures, Starski submitted authenticated and certified letters from a member of the Russian Duma reporting that Hospital No. 67 had no record of Kirzhnev as a patient during the relevant time. Mot. for Sanctions, Exs. 4–5. Accordingly, Starski filed the instant motion for sanctions against the defendants for perpetrating a fraud on the court; he requests judgment in his favor and an award of attorneys' fees. A hearing was held on the motion on May 24, 2010 immediately before trial began, and Kirzhnev testified that he had not undergone surgery at all and had remained in hospital only for four or five days before checking himself out and returning home. With trial set to begin that day, I took Starski's motion for sanctions under advisement.

In June 2010, following the verdict in this case, Kirzhnev filed a motion for leave to file two witness statements. Mot. for Leave, June 9, 2010 (Doc. No. 114). In these unsworn statements, two of Kirzhnev's friends — a Duma representative and Kirzhnev's family attorney — "confirmed" Kirzhnev's stay in Hospital No. 67 and stated that they had visited him there. One "confirmed" the hospital stay from February _**15**_ through February 26, and the other "confirmed" a stay from February _**16**_ through February 26. It bears repeating that Kirzhnev had earlier alerted the court through counsel and a letter from his purported

doctor that he had entered hospital after a fall on February **17**, 2010. Starski opposed Kirzhnev's motion to file the inconsistent letters. A month later, Starski learned through his contact in the Russian Duma that no A.V. Sokolov had worked at Hospital No. 67 from February 1, 2010, through May 1, 2010. Certified documents to that effect were submitted. *See* Pl.'s Reply, Ex. 7 (Doc. No. 119).

Despite the confusion regarding Kirzhnev's purported medical treatment, the trial went forward as rescheduled. Following three days of testimony, the jury found that Kirzhnev and Starski had not entered into an agreement regarding the debt-swap agreement, and judgment was entered in favor of the defendants.

In the wake of the disappointing trial outcome, Starski Shortly thereafter, Starski timely moved for a new trial on the basis that certain impeachment evidence was improperly excluded at trial. In addition, other motions remain outstanding, including the motion for sanctions and Kirzhnev's motion to strike the motion for sanctions, Starski's unopposed motion to amend the complaint to conform to the evidence adduced at trial, and the motions for leave to file and to strike the motion for leave to file the additional witness statements. I address all of the pending motions at this time.

## II. ANALYSIS

### A.   Motion for a New Trial

Starski contends that the trial was manifestly unfair and
requires retrial because evidence of Kirzhnev's prior conviction
by a Russian court and the destruction of evidence by the Russian
police and Kirzhnev's wife was kept from the jury.  In
particular, he argues that, under Fed. R. Evid. 609(a)(2),
Kirzhnev's Russian conviction of bribery and forgery must be
admitted for impeachment purposes.  Additionally, Starski argues
that limitations on his cross-examination of Kirzhnev with
respect to the destruction of evidence were unfairly prejudicial
and outcome determinative because the documents would have
provided crucial handwriting exemplars and substantiated
Kirzhnev's many trips to Vietnam.

#### 1. Standard of Review

It is "firmly within the trial court's discretion" to grant
a new trial.  *Lama v. Borras*, 16 F.3d 473, 477 (1st Cir. 1994).
That discretion, however, is "limited to those circumstances in
which allowing the verdict to stand would result in a miscarriage
of justice."  *O'Rourke v. City of Providence*, 235 F.3d 713, 726
(1st Cir. 2001) (citation omitted); *see also Crowe v. Marchand*,
506 F.3d 13, 19 (1st Cir. 2007) (stating that a new trial may be
granted "only if the verdict is against the law, against the
weight of the credible evidence, or tantamount to a miscarriage

of justice"). Accordingly, "[a] motion for a new trial is not to be taken lightly" but should only be granted "when an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair." *MacNeill Eng'g Co., Inc. v. Trisport, Ltd.*, 126 F. Supp. 2d 51, 63 (D. Mass. 2001) (internal citation and quotation marks omitted).

Starski, as the moving party, bears the burden of "show[ing] that th[e] court committed error and that the error rendered the trial unfair." *Id.* at 64. In making a determination, the court "is free to independently weigh the evidence," including "the credibility of the witnesses." *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009).

## 2. Kirzhnev's Russian Convictions

Before trial, Starski filed a motion *in limine* to admit evidence of Kirzhnev's Russian convictions under Fed. R. Evid. 404(b) and 609(a)(1), and Kirzhnev filed a motion *in limine* to exclude the same evidence. Following a pretrial hearing on the motion, I determined that the conviction should not be raised at trial. I did so on the basis that the evidence of the convictions had not been properly authenticated. I also determined that the facts of convictions, without any details submitted as to its grounds or factual findings upon which I could assess the integrity of the prosecution, would be unduly prejudicial to Kirzhnev in this context. For the same reasons, I

am satisfied that the exclusion of the evidence of conviction was proper and did not render the trial unfair.

Under the Federal Rules of Civil Procedure, proof of an admissible foreign official record may be evidenced only by an "official publication of the record" or a "record — or a copy — that is attested by an authorized person and is accompanied either by a final certification of genuineness or by a certification under a treaty or convention to which the United States and the country where the record is located are parties." Fed. R. Civ. P. 44(2). Because Russia has "unilaterally suspended all judicial cooperation with the United States in civil and commercial matters" under the Hague Convention on the Service of Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, 20 U.S.T. 361, Nov. 15, 1965, since July 2003, final certification is usually necessary to admit a Russian official record.[3] Dep't of Justice, *Russia Judicial Assistance,* http://travel.state.gov/law/judicial/judicial_3831. html; *see also Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1237–38 (Fed. Cir. 2010).

---

[3]Despite the apparent lack of cooperation in civil cases by Russia, Starski has managed to acquire what appears to be an official apostille (final certification) under the Hague Treaty, signed by the First Deputy of the Ministry of Justice, for several letters from Russian Duma representative Mikhail Pitkevich. The apostille, however, does not confirm Pitkevich's signature, but rather confirms the signature of the notary public who, in turn, had attested to Pitkevich's signature. *See* Mot. for Sanctions, Ex. 4 (Doc. No. 101).

A final certification of genuineness "must certify the genuineness of the signature and official position of the attester or of any foreign official whose certificate of genuineness relates to the attestation or is in a chain of certificates of genuineness relating to the attestation." Fed. R. Civ. P. 44(a)(2)(B). Only very limited categories of official personnel may issue a valid final certification: "by a secretary of a United States embassy or legation; by a consul general, vice consul, or consular agent of the United States; or by a diplomatic or consular official of the foreign country assigned or accredited to the United States." Fed. R. Civ. P. 44(a)(2)(B). A savings clause permits admission of a foreign official record with attestation but without a final certification only "for good cause" and "[i]f all parties have had a reasonable opportunity to investigate [its] authenticity and accuracy." Fed. R. Civ. P. 44(a)(2)(C).

Similarly, under the Federal Rules of Evidence, a foreign public document — a more general category than the official records covered under Fed. R. Civ. P. 44(a)(2) — is admissible only if authenticated. Fed. R. Evid. 901. Such a document can be authenticated by extrinsic evidence, Fed. R. Evid. 901(b), or can be self-authenticating if it "purport[s] to be executed or attested in an official capacity by a person authorized by the laws of a foreign country to make the execution or attestation,

and accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation . . . ." Fed. R. Evid. 902(3). Rule 902(3) contains the same "good cause" savings clause and requirements for final certification as does Rule 44(a)(2), upon which Rule 902(3) is based. *United States v. DeJongh*, 937 F.2d 1, 4 (1st Cir. 1991).

The documentary evidence of conviction submitted by Starski is infirm in multiple respects.

*First*, it is unclear whether the document should be considered an official public record of conviction at all. The document is not a formal judgment of conviction or other court or criminal record. It purports to be a response to an inquiry (*spravka*), presumably made by the plaintiff to the Moscow Municipal Court, and signed by the Secretary of that court, E.V. Panova. The document states that Alexander Kirzhnev was convicted of bribery of a public official, forgery and use of a forged document, and unlawful border crossing, and was sentenced to serve four years and six months on July 26, 2006. Pl.'s Mot. *in limine*, Ex. 1 (Doc. No. 81). Although the official translation of the document states "Seal of Moscow City Court" following the Secretary's signature, no such seal appears on the

copy of the document provided to the court. Following the Secretary's signature, there is only the Secretary's legibly written name, Panova E.V., in parentheses. The lack of an official seal — usually in the form of a stamp recognized in a jurisdiction, like Russia, famously concerned with such evidence of authority — is highly unusual for an official Russian document. Whether the document is governed by Fed. R. Civ. P. 44(a)(1) as a foreign public record and/or Fed. R. Evid. 902(3) is irrelevant here because the rules are largely identical and neither is satisfied, the questions regarding the nature of the document certification underscore its lack of reliability.

*Second*, even if E.V. Panova's signature can be construed as an official attestation "by an authorized person" — which, lacking the court's seal, is itself in doubt — there is no final certification as required by Fed. R. Civ. P. 44(a)(2) and Fed. R. Evid. 902(3). Without final certification, the document is inadmissible. *See DeJongh*, 937 F.2d at 4 ("Where a rule prescribes specific conditions for authenticating a public document, and the document's proponent fails to comply with the specified conditions, the proffer should ordinarily be rejected."); *cf. Lloyd v. Am. Exp. Lines, Inc.*, 580 F.2d 1179, 1188 n.19 (3d Cir. 1978) ("Inasmuch as the record of the Japanese proceeding was exemplified by a secretary of the Yokohama District Public Prosecutor's Office, and transmitted under seal

of the Consul of the United States, we note that the requirements

for self-authentication of foreign public documents of Fed. R.

Evid. 902(3) are met."). Thus there is no proof that E.V. Panova

is indeed the Secretary of the Moscow Municipal Court or that, as

such, she is in a position to attest to a judgment of conviction

by that court. *See United States v. Squillacote*, 221 F.3d 542,

562 (4th Cir. 2000) ("An examination of Rule 44(a)(2) and Rule

902(3) reveals two requirements for the authentication of a

foreign document. First, there must be some indication that the

*document* is what it purports to be . . . . Second, there must be

some indication that the *official* vouching for the document is

who he purports to be." (emphasis in original)). As will appear

below, questions raised regarding the genuineness of letters from

Dr. Sokolov of Hospital No. 67 and other submissions by Kirzhnev

originating in Russia give additional weight to the necessity for

such certification here.

*Third*, Starski has not demonstrated that the conviction is

admissible under the savings clauses of Fed. R. Civ. P.

44(a)(a)(2) and Fed. R. Evid. 902(3). The savings clauses permit

admissibility of an attested foreign document lacking final

certification "for good cause" if "all parties have had a

reasonable opportunity to investigate [its] authenticity and

accuracy." Fed. R. Civ. P. 44(a)(2)(C); *see also DeJongh*, 937

F.2d at 4. The pretrial filing of the parties' motions *in limine*

14

regarding the evidence of conviction provided ample opportunity for the parties to examine the document in question. To be sure, Kirzhnev does not dispute that he has been convicted by a Russian court. However, Starski has neither demonstrated nor offered any good cause why he did not seek proper authentication of the conviction. Starski does not maintain that he attempted to obtain proper certification but rather explains that he was stymied in some fashion by Russian authorities. This does not meet his burden. *Compare United States v. Leal*, 509 F.2d 122, 126 (9th Cir. 1975) (finding uncertified foreign document admissible because the proponent "did all that could be done under the circumstances" to try to obtain certification). The record does not reveal any other good cause for lack of certification. *See United States v. Yousef*, 175 F.R.D. 192, 193 (S.D.N.Y. 1997) ("In the matter at hand, the government has not advanced facts explaining its inability to obtain certification from one of the officials specified in the rule. Thus, the documents cannot be admitted at this time."). In fact, that Starski obtained an apostille from the Ministry of Justice for a subsequent Russian public document, *see supra* Note 3, demonstrates that Starski had the ability and the connections to obtain the proper certification if required. Accordingly, the good-cause exemptions do not apply here, and the documentary evidence of conviction was properly excluded.

*Finally*, even had the Moscow Municipal Court document been properly authenticated, I remain unwilling to admit evidence of the conviction under Rule 609(a), at least without the submission of a more developed record regarding the Russian criminal proceedings. Kirzhnev has raised questions regarding the due process and procedural safeguards afforded him during the criminal proceedings. Given recent criticisms of the Russian criminal justice system, I cannot find, based on this undeveloped record, that any of the Russian convictions were fundamentally fair. *See, e.g.*, Mark C. Toner, Acting Spokesman, U.S. Dep't of State, Daily Press Briefing, Dec. 27, 2010, *available at* http://m.state.gov/md153729.htm (stating that the verdict in the second trial of Mikhail Khodorkovsky and his associate "raises serious questions about selective prosecution and about the rule of law being overshadowed by political considerations"); Peter D. Greenberg, *The Kremlin's Eye: The 21st Century Prokuratora in the Russian Authoritarian Tradition*, 45 Stan. J. Int'l L. 1 (2009) (describing the prevalence and scope of prosecutorial abuse, human rights violations, and politically motivated cases in Russia); Peter Finn, *Fear Rules in Russia's Courtrooms*, The Washington Post, Feb. 27, 2005, at A1 (reporting that the conviction rate in Russia is "around ninety-nine percent, according to the administrative arm of [Russia's] Supreme Court" and that, "[i]n 2003 and in the first nine months of 2004, two

district courts in Moscow that heard a total of 4,428 criminal cases had no acquittals").

As a general proposition, of course, with respect to admissibility for impeachment purposes, "foreign convictions stand on the same footing as domestic proceedings provided that the procedural protections necessary for fundamental fairness are observed by the foreign jurisdiction." *United States v. Rodarte*, 596 F.2d 141, 146 (5th Cir. 1979) (*per curiam*) (citing *United States v. Wilson*, 556 F.2d 1177, 1178 (4th Cir.), *cert. denied*, 434 U.S. 986 (1977) (*per curiam*)). Procedural perfection or safeguards identical to those provided in the United States are not required. *Wilson*, 556 F.2d at 1178. However, the proceedings must be "fundamentally fair." *Id.* While the burden is on the opponent of the conviction to demonstrate a lack of fundamental fairness, *see United States v. Manafzadeh*, 592 F.2d 81, 90 (2d Cir. 1979); *Wilson*, 556 F.2d at 1178; *see also Commonwealth v. Gagnon*, 449 N.E.2d 686, 698 (Mass. Ct. App. 1983), where the opponent has provided a specific basis for questioning the trustworthiness of the conviction, the proponent should be expected to demonstrate that the foreign legal system afforded the procedural protections necessary for fundamental fairness. *Cf. United States v. Garland*, 991 F.2d 328, 335 (6th Cir. 1993) ("Except where foreign judgments appear to lack

trustworthiness, the burden should be on the party opposing their admission to show lack of trustworthiness.").

The documentary evidence of the conviction was inadmissible as unauthenticated and there are sufficient grounds to question the integrity of the underlying Russian conviction itself. I note that Starski has not submitted any documentation regarding the fairness or factual findings underlying Russian criminal proceedings either generally or specifically with reference to Kirzhnev's prosecution. To the contrary, he agrees that Russian police confiscated and/or destroyed documents in Kirzhnev's possession at the time of his arrest. Given the lack of record provided, the questionable authenticity of the conviction confirmation, and the accusations — albeit fairly general in scope — made by Kirzhnev regarding the fairness of his conviction, it was incumbent on the proponent of the conviction to provide a fuller factual development before evidence of conviction would be admissible. He has not done so.

### 2. Destroyed Documents

The parties agree that Russian law enforcement confiscated documents during Kirzhnev's arrest and that Kirzhnev's wife destroyed other documents around the time of the arrest. Among the lost documents are Kirzhnev's passport and copies of the contract between Kirzhnev, DAI Synditrade, and Sovico. Starski argues that I erred in excluding a line of questioning during

Kirzhnev's cross-examination into why Kirzhnev no longer had the passport and the original Sovico contract in his possession. Starski argues that the documents would provide an exemplar of Kirzhnev's signature to compare with the purported contract between Starski and Kirzhnev and that the passport would substantiate that Kirzhnev made 15-25 trips to Vietnam between 1998 and 2002. At sidebar, I limited this line of questioning to whether Kirzhnev still possessed the passport. Starski now maintains that this limitation was unduly prejudicial to his case and resulted in an unfair trial.

Federal Rule of Evidence 403 states that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." The Supreme Court has held that "[a]ssessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403." *Sprint/United Mgmt. v. Mendelsohn*, 128 S. Ct. 1140, 1145 (2008) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)). I am satisfied that my original determinations — that the evidence was of little probative value and unfairly prejudicial to Kirzhnev in that a

conviction of uncertain integrity would have been insinuated into the record before the jury — were proper.

The evidence of Kirzhnev's travel to Vietnam was of *de minimis* probative value. The essence of the dispute between the parties was not whether Kirzhnev had negotiated a debt-swap with the help of Sovico; rather the case rested on whether there was a valid and enforceable separate agreement between Starski and Kirzhnev. Evidence of Kirzhnev's trips to Vietnam provide no particular insight into the resolution of that question and, as such, was of very little relevance.

The line of questioning regarding the passport was instead a backdoor attempt to impeach Kirzhnev's credibility by informing the jury that the passport was either destroyed by Kirzhnev's wife or taken by Russian police while Kirzhnev had been arrested. This oblique spoliation-type inference would have been unfairly prejudicial and shed no light on whether the agreement between Starski and Kirzhnev were genuine. Indeed, Starski conceded at sidebar that the line of questioning was really an alternative means of putting Kirzhnev's Russian criminal history before the jury despite my earlier ruling of inadmissibility regarding that matter.

The probative value of the Sovico contract is similarly lacking in significance. Starski again attempted to get before the jury testimony that would have demonstrated Kirzhnev's arrest

and conviction.  Kirzhnev had provided alternative handwriting samples that had been examined by an expert and to which Starski had raised no objection.  The exclusion of the evidence, therefore, was not unduly prejudicial to Starski.

## B.   Motion for Sanctions

Shortly before the rescheduled trial date of May 24, 2010, Starski filed a motion "pursuant to Fed.R.Civ.P. 11(b)" seeking sanctions in the form of entry of judgment against the defendants for fraud against the court.  Mot. for Sanctions at 1 (Doc. No. 101).  Starski maintains that Kirzhnev filed numerous fraudulent documents regarding his February 17, 2010, medical emergency with the court in an attempt to unduly delay the trial.  *Id*.  This delay, Starski contends, prejudiced him.

Federal Rule of Civil Procedure 11(b) requires an attorney to certify that filed papers are "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that "the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(1), (3).  The First Circuit has made clear that "[t]he moving party must . . . serve the Rule 11 motion on opposing counsel at least twenty-one days prior to filing with the court so as to provide the adversary time to withdraw the challenged paper."  *Lamboy-Ortiz v. Ortiz-Velez*, — F.3d —, 2010 WL 5129824, at *12 (1st Cir. 2010)

(citing Fed. R. Civ. P. 11(c)(2)).  Noncompliance with this "safe
harbor" provision is fatal to a Rule 11 motion.  *See id.*
(reversing an award of Rule 11 sanctions because the moving party
failed to comply with this necessary prerequisite); *see also* Fed.
R. Civ. P. 11(c)(2) ("The motion . . . *must not be filed or be*
*presented to the court* if the challenged paper . . . is withdrawn
or appropriately corrected within 21 days after service or within
21 days after service . . . ." (emphasis added)).  Starski did
not comply with the safe harbor provision, and, insofar as his
motion for sanctions was pursuant to Rule 11, I must deny it.

However, it is evident that Starski's motion should not be
viewed as grounded solely in Rule 11(b) but rather should be
construed more broadly as a motion for entry of judgment based on
the court's "inherent power" to impose sanctions for "bad-faith
conduct" or "an attempt to perpetrate a fraud on the court."
*Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *see also Aoude*
*v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) ("It
strikes us as elementary that a federal district court possesses
the inherent power to deny the court's processes to one who
defiles the judicial system by committing a fraud on the
court.").  Starski's motion relies upon case law addressing fraud
on the court, and Kirzhnev's opposition to the motion similarly
addressed the court's inherent powers apart from Rule 11.  The
defendants, therefore, had a full and fair opportunity to respond

22

to the motion as one for entry of judgment, and I will similarly consider the motion in that context.

Although the decision to impose sanctions on a party is a matter squarely within the discretion of the district court, *Silva v. Witschen*, 19 F.3d 725, 730 (1st Cir. 1994), "[a] court must, of course, exercise caution in invoking its inherent power," *Chambers*, 501 U.S. at 50. The sanction of entry of judgment on the grounds of fraud on the court is an "extreme remedy" appropriate only in the face of an extraordinary injustice. *Aoude*, 892 F.2d at 1118 ("[D]istrict courts must reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious."); *see also Varian Semiconductor Equip. Assocs., Inc. v. Advanced Ion Beam Tech., Inc.*, No. 08-10487, 2010 WL 2132267, at *5 (D. Mass. May 25, 2010). Greater care is warranted following a jury's verdict against the movant. In order to prevail, Starski must demonstrate by clear and convincing evidence that Kirzhnev perpetrated a fraud on the court. *Hull v. Municipality of San Juan*, 356 F.3d 98, 101 (1st Cir. 2004).

The First Circuit has held that "fraud on the court occurs[] where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing

23

party's claim or defense." *Colon-Millin v. Sears Roebuck De P.R., Inc.*, 455 F.3d 30, 37 (1st Cir. 2006). Perjury alone is insufficient to constitute fraud on the court because alternative sanctions exist to address perjury or fabrication of evidence. *See Geo. P. Reintjes Co. v. Riley Stoker Corp.*, 161 F.R.D. 2, 6 (D. Mass. 1995) (denying dismissal on Rule 60(b) motion for "fraud on the court" on the basis of perjured testimony at trial).

Starski does not establish that Kirzhnev's alleged scheme to delay an unwanted or uncomfortable trial rendered the trial itself unfair. Kirzhnev's conduct, of course, was far from exemplary. He was a reluctant participant in this litigation from start to finish. He was tardy and less than forthcoming. The emergency motion following his "surgery" and the inconsistent and quite possibly fraudulent letters from his purported doctor and close-but-connected friends (who reported they had visited him in hospital before he was admitted)[4] that followed were a distraction from the contract dispute that was at the center of this action. However, the postponement of the trial was not unduly prejudicial to Starski, and indeed he did not oppose the

---

[4] I find that the unsworn letters purporting to confirm Kirzhnev's in-patient treatment at Hospital No. 67 are unreliable and, potentially, fraudulent. The statements are nearly identical and both "confirm" that Kirzhnev was in hospital before the date upon which he himself testified to entering the hospital. In order to provide a full record, especially for review by the United States Attorney, I, however, grant leave (Doc. No. 114) to file the additional statements.

continuance at the time.  Although he now alleges that he was unable to present one witness because of the rescheduling, that witness was to testify only regarding this court's personal jurisdiction over Kirzhnev and thus did not "[go] to the heart of the matter." *Hull*, 356 F.3d at 102-03.  Since Kirzhnev stipulated to personal jurisdiction, the absence of this witness was not prejudicial.

Thus, the purported surgery was a collateral event that was immaterial to the merits of the dispute: the validity of the alleged agreement between Starski and Kirzhnev; it could not itself generate an unfair resolution of the case.  It is distinguishable from those cases in which courts have found dismissal or entry of judgment appropriate for fraud on the court.  *See, e.g.*, *Hull*, 356 F.3d at 101 (finding dismissal appropriate where plaintiff made material omissions during deposition with intent to misrepresent his medical history and within context of a "broader pattern of deceit"); *Aoude*, 892 F.2d at 1118 (affirming dismissal where plaintiff relied upon fake contract as basis for suit and delayed amendment of claim to reflect true agreement); *Plasse v. Tyco Elecs. Corp.*, 448 F. Supp. 2d 302, 309-10 (D. Mass. 2006) (granting dismissal where the party had destroyed and modified electronic documents before and after the action was filed, lied and was evasive during depositions, and provided excuses that "verge[d] on the absurd");

*Davidson v. Cao*, 211 F. Supp. 2d 264, 279 (D. Mass. 2002)

(finding that plaintiff's conduct constituted fraud on the court

because plaintiff attached a redacted contract to the complaint,

distributed that contract to the press, and filed a complaint

based on the redacted contract).

Kirzhnev's delay tactics were serious distractions and

fundamental impediments to timely travel of the case, but they

did not go to the heart of the case and did not result in a

manifest injustice at trial. Accordingly, I will deny Starski's

motion for sanctions. However, because I am concerned that

Kirzhnev appears to have procured potentially perjurious and

fraudulent statements designed to impede the Order setting this

case for trial on February 22, 2010, I am by a separate Order to

Show Cause issued this day affording an opportunity for the

parties to make submissions regarding the question whether a

referral should be made to the United States Attorney's Office

for such further action as is deemed appropriate to determine

whether fraud amounting to obstruction of justice was perpetrated

by Kirzhnev directly or through persons acting under his

direction constituting contempt of court under 18 U.S.C. §

401(3).

### III. CONCLUSION

For the reasons set out more fully above, the motions for a new trial (Doc. No. 117) and for sanctions (Doc. No. 101) are DENIED.  The motions to amend the complaint to conform to the evidence adduced at trial (Doc. No. 104) and for leave to file additional witness statements (Doc. No. 114) are GRANTED.  The motion to strike the motion for leave to file additional witness statements (Doc. No. 115) and to strike the motion for sanctions (Doc. No. 102) are DENIED as moot.


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE